In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-08-00455-CV


____________________



IN RE COMMITMENT OF BENITO DAVILA






On Appeal from the 435th District Court


Montgomery County, Texas


Trial Cause No. 08-01-00787-CV






MEMORANDUM OPINION


 Benito Davila appeals the judgment and order of civil commitment as a sexually
violent predator pursuant to a jury's verdict that Davila suffers from a behavioral abnormality
that predisposes him to engage in a predatory act of sexual violence. See Tex. Health &
Safety Code Ann. §§ 841.001-.150 (Vernon 2003 & Supp. 2009). In three issues, Davila
contends (1) the evidence is legally insufficient to support the jury's verdict, (2) the evidence
is factually insufficient to support the jury's verdict, and (3) the trial court erred in denying
Davila's motion for instructed verdict. We affirm the judgment and order of civil
commitment.

 In his first issue, Davila contends the evidence is legally insufficient to support the
jury's verdict beyond a reasonable doubt because the only evidence supporting the finding
came from conclusory and speculative testimony by the State's expert witnesses. Davila
presented his legal sufficiency challenge through his motion for directed verdict. See Tex.
R. Civ. P. 268. Davila's third issue contends the trial court erred in denying Davila's motion
for directed verdict because the State failed to prove beyond a reasonable doubt that Davila
suffers from a behavioral abnormality. The standard of review is the same for both issues. 
See Williams v. State, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996); City of Keller v. Wilson,
168 S.W.3d 802, 823-25 (Tex. 2005). Accordingly, we address these issues together. 

 We review all of the evidence in a light most favorable to the verdict to determine
whether a rational jury could have found beyond a reasonable doubt that Davila suffers from
a behavioral abnormality that makes him likely to engage in a predatory act of sexual
violence. See In re Commitment of Gollihar, 224 S.W.3d 843, 846 (Tex. App--Beaumont
2007, no pet.). Davila argues that the State offered expert witness testimony so conclusory
and speculative that it lacks probative value. See generally Coastal Transp. Co. v. Crown
Cent. Petroleum Corp., 136 S.W.3d 227, 231-32 (Tex. 2004) (factually unsubstantiated bare
opinions constitute no evidence); see also In re Commitment of Beasley, No. 09-08-00371-CV, 2009 WL 3763771 (Tex. App.--Beaumont Nov. 12, 2009, pet. filed) (mem. op.); In re
Commitment of Barbee, 192 S.W.3d 835, 842-43 (Tex. App.--Beaumont 2006, no pet.)
(noting that complaint concerning foundational data must be preserved by timely objection
to admission of evidence). Davila also argues that the State failed to prove that he currently
suffers from a behavioral abnormality, in light of his lack of mobility and impotence that he
contends prevents him from being a menace to the health and safety of others.

 In Davila's trial, two experts testified without objection either to their qualifications
or to the substance of their testimony. Timothy Proctor is a board-certified forensic
psychologist and Lisa Clayton is a board-certified forensic psychiatrist. A review of the
record reveals the bases for the opinions stated by these experts. For instance, Proctor based
his opinion that Davila meets the criteria for behavioral abnormality on a referral packet that
included Davila's criminal records, prison disciplinary records, and medical information.
These are the same types of records relied upon by others in his field to evaluate sex
offenders. Proctor also interviewed Davila. Proctor performed actuarials on Davila,
including the Static-99, the Minnesota Sex Offender Screening Tool Revised ("MnSOST-R"), and the Psychopathy Checklist Revised ("PCL-R"). In his testimony, Proctor explained
the purpose and function of each of these instruments. Proctor identified specific items on
each of these tests, described their significance, and applied each to Davila. This testimony
revealed the basis for Proctor's psychological diagnosis of Davila based upon the Diagnostic
and Statistical Manual Revised ("DSM-IV"). Proctor also explained in detail the factors he
considered in his diagnosis of "pedophilia nonexclusive type, attracted to females; cocaine
abuse, rule out cocaine dependence; and personality disorder." Proctor further explained the
implication of each diagnosis before stating that in his professional opinion Davila is at high
risk to reoffend and that Davila suffers from a behavioral abnormality. Proctor testified that
Davila's PCL-R score of 37 is above the benchmark for psychopathy and that such a score
combined with pedophilia was important to his opinion of risk for reoffending. After
reviewing 600 pages of records, Proctor revised the MnSOST-R score and lowered it, which
placed Davila in the moderate range for reoffending. This testimony is not, as Davila argues,
so speculative and conclusory as to be completely lacking in probative value. 

 Likewise, the basis for Clayton's opinion is revealed through her testimony. Clayton
testified that she reviewed the referral packet, and that the records contained in the packet
are typically used by persons in her field to perform a psychiatric evaluation. Clayton also
interviewed Davila for more than two hours. Clayton based her opinion that Davila suffers
from a behavioral abnormality that makes him likely to engage in predatory acts of sexual
violence, in part on Davila's criminal history. That criminal history included a 1978
conviction for indecency with a child, which resulted from an occasion on which Davila was
caught inserting his sexual organ into the sexual organ of a nine-month-old female. Davila
reoffended in 2004, this time using a stick to penetrate the sexual organ of a six-year-old
female. Davila also committed other offenses while on mandatory supervision, which
Clayton found significant because it showed Davila cannot control his behavior even when
he is being closely watched. Clayton noted that, typical of someone with antisocial
personality traits, Davila avoids taking responsibility for his criminal acts and his alcohol and
drug use. For his current behavior, Clayton noted that in the course of a 2008 child-protective-services-investigation, a four-year-old female had reported that she had slept in
a bed with Davila and Davila's mother. Clayton testified that she used the "mini version"
of the DSM-IV, the DSM-IV-TR, which she testified contains the consensus guidelines of
diagnoses. Clayton diagnosed Davila with "pedophilia, nonexclusive type females; alcohol
abuse and cocaine abuse; and personality disorder, not otherwise specified antisocial traits."
She explained to the jury what the diagnoses mean. Based on the diagnoses, Clayton
expressed her opinion that Davila suffers from a behavioral abnormality that makes him
likely to engage in predatory acts of sexual violence. Clayton's testimony is not, as Davila
argues, so speculative and conclusory as to be completely lacking in probative value. 

 Davila also argues that complications from diabetes have rendered him unable to act
upon any aberrant urges he might have. A sexually violent offense can be committed without
the use of a functional male sexual organ. See Tex. Health & Safety Code Ann. §
841.002(8) (Vernon Supp. 2009) (listing sexually violent offenses, including aggravated
sexual assault of a child); see e.g., Tex. Pen. Code Ann. § 22.021(a)(1)(B)(i) (Vernon Supp.
2009) ("A person commits an offense . . . if the person intentionally or knowingly . . . causes
the penetration of the . . . sexual organ of a child by any means[.]"). One of Davila's
predicate offenses was committed with a stick. Furthermore, as recently as 2008, Davila was
reported to have been sleeping in a bed with a four-year-old female despite his reputed lack
of mobility. Davila argues that the experts failed to account for his current physical condition
in forming their opinions, but his argument is not supported by the record. Both Proctor and
Clayton considered Davila's diabetic condition, but noted that Davila had previously behaved
in a manner that would enable him to commit an assault despite his physical disabilities.

 Given the expert testimony and the evidence of Davila's long-term patterns of
behavior, a rational jury could find beyond a reasonable doubt that Davila suffers from a
behavioral abnormality that predisposes him to engage in a predatory act of sexual violence.
Accordingly, the evidence is legally sufficient to support the verdict and the trial court did
not err in submitting the case to the jury. We overrule issues one and three.

 In his second issue, Davila contends that the evidence is factually insufficient to prove
beyond a reasonable doubt that Davila suffers from a behavioral abnormality because his
severe physical limitations make it unlikely that he can engage in predatory acts of sexual
violence. "In a factual sufficiency review, we view all of the evidence in a neutral light and
ask whether a jury was rationally justified in finding guilt beyond a reasonable doubt." 
Gollihar, 224 S.W.3d at 846. 

 Davila argues that the experts ignored the salient fact in the record about his current
physical condition--his extremely limited mobility and diminished sensation in his limbs. 
Both Proctor and Clayton acknowledged that Davila suffers from significant complications
of diabetes. In forming their opinions, Proctor and Clayton were also aware that Davila
committed his most recent predicate offense with an object and that approximately one
month before the trial, a four-year-old child reported to a child protective services worker
that she had been sleeping in a bed with Davila and his mother. Thus, the jury could
logically infer that it would be possible for Davila to find himself in close proximity to
children and that it would be physically possible for him to commit a sexual assault
notwithstanding his impotence. We hold the evidence is factually sufficient to support the
jury's verdict. We overrule issue two and affirm the judgment.

 AFFIRMED.

 
 __________________________________

 CHARLES KREGER

 Justice


Submitted on December 3, 2009

Opinion Delivered January 14, 2010


Before McKeithen, C.J., Gaultney and Kreger, JJ.